## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CHRISTI S. HOLLIS,                              )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )          Civil Action No. 12-00659-N
                                                )
CAROLYN W. COLVIN,                              )
Acting Commissioner of Social Security,[1]      )
                                                )
            Defendant.                          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Christi S. Hollis brings this action seeking judicial review of a final

decision of the Commissioner of Social Security denying her application for

supplemental security income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The parties have consented to the exercise of jurisdiction by the undersigned United

States Magistrate Judge for all proceedings in this Court pursuant to 28 U.S.C. §

636(c).   (*See* Doc. 15 ("In accordance with provisions of 28 U.S.C. 636(c) and

Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate

Judge conduct any and all proceedings in this case, including . . . order the entry of a

final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 17 (order

of reference).)   Upon consideration of the administrative record ("R.") (Doc. 12),

Hollis's brief (Doc. 13), and the Commissioner's brief (Doc. 22),[2] it is determined that

---

[1]      Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013.   Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Colvin is
substituted for Michael J. Astrue as the proper defendant in this case.

[2]      The Court granted the parties' request to waive oral argument.   (*See* Docs.
16, 18.)

the Commissioner's decision denying Hollis benefits should be **AFFIRMED**.[3]

## I.     Procedural Background

On April 14, 2009, Hollis filed an application for SSI (R. 128-130), alleging disability beginning September 30, 2008 (*see* R. 128).   Her application was initially denied.   (*See* R. 77-83.)   A hearing was then conducted before an Administrative Law Judge on September 30, 2010 (*see* R. 46-74).   On October 19, 2010, the ALJ issued a decision finding Hollis was not disabled (R. 30-45), and she sought review from the Appeals Council.   The Appeals Council issued its decision declining to review the ALJ's determination on August 23, 2012 (*see* R. 1-7)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on October 17, 2012 (*see* Doc. 1).

## II.     Standard of Review and Claims on Appeal

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work.   *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history.   *Id.*   Once the plaintiff meets this

---

[3]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals.   (*See* Doc. 15 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, Hollis raises one issue: whether the ALJ's failure to order a second consultative examination in light of medical evidence that postdates Hollis's consultative examination means the ALJ's decision is not supported by substantial evidence.   (*See generally* Doc. 13.)

### III.   Discussion

### A.    The ALJ's decision.

After identifying the following severe impairments: "Mood Disorder, NOS; Personality Disorder, Cluster B; and Polysubstance Abuse" (R. 35), but concluding no impairment or combination of impairments meets or medically equals a listed impairment (*see* R. 35-36), the ALJ determined that Hollis "has the residual functional capacity to perform at least light work as defined in 20 CFR 416.967(c). She is able to understand, remember, and carry out short and simple instructions, and concentrate and attend for reasonable periods of time.   Contact with the general public should not be a usual job duty." (R. 36-37.)   In support of his RFC determination, the ALJ sets out at some length Hollis's hearing testimony, which included that

> She has received treatment for mental issues at Alta Pointe [sic].   She was admitted and treated at the Love Lady [sic] Center from November 2009 to May 2010.   She got her job at the Irondale Café through the Love Lady [sic] Center.   She was treated for Bipolar Disorder, depression, and Obsessive Compulsive Disorder.   She is on medications now.   She was just placed on an assistance program.   She has not been readmitted to Alta Pointe [sic].   She was dropped because it had been a long time since she had been seen.   She sees a person in Mt. Vernon for her mental health issues.   Her medications help her anxiety and depression "some."   She has times throughout the month when nothing helps much.   She has weeks or days where she wants to sleep.   Her cycles of problems with depression have been going on for

about 10 years [or] longer.   She has had difficulty with drugs and
alcohol in the past.   It has been at least one year.

(R. 37-38.)

While the ALJ gave "significant weight" to the July 8, 2009 opinion of the
state agency reviewing psychologist, Dr. Linda Duke, and the July 22, 2009
evaluation completed by Dr. John Davis (*see* R. 38-39), the ALJ also relied on myriad
medical records (*see id.*)   For purposes of this appeal, it should be noted that the
ALJ specifically discussed the following medical records that postdate the reports by
Drs. Duke and Davis: (1) October 13, 2009 treatment notes from AltaPointe, which
"indicate[d] that [Hollis] last used crack a couple of days ago [and] was on a waiting
list for the Second Chance Program" (*see* R. 38 (citing R. 254-255)); and (2) treatment
notes from the Lovelady Center (dated November 9, 2009 through May 20, 2010)
regarding Hollis's treatment for drug and alcohol abuse and also noting that Hollis's
Global Assessment of Functioning ("GAF") was "rated as 54, indicating moderate
symptoms" in December 2009 (*see* R. 39 (citing R. 262-270)).   Finally, as to Hollis's
mental impairments, the ALJ concluded: "Nothing in the record suggests that [her]
mental impairments have been incapable of being alleviated or controlled with the
proper and regular use of prescription medications.   In fact, the record discloses
that such medications have proven successful in assisting [Hollis] in maintaining
control of her conditions and mitigating any accompanying symptomatology."   (R.
39.)

## B.   The plaintiff's argument on appeal.

As indicated above, on appeal, Hollis presents a single issue.   She claims that

certain medical records, some cited in the ALJ's decision, necessitated that the ALJ, before rendering his decision, order a consultative mental examination "to clarify [Hollis's] mental residual functional capacity and allow the ALJ to make an informed decision."   (Doc. 13 at 5; *see id.* at 4-6.)

> After the claimant saw Dr. Davis and her file was reviewed by Dr. Duke, she was admitted to a psychiatric center for medical health treatment at the Mobile County Health Department.   She was diagnosed with Bipolar Disorder, Manic with psychotic features and Obsessive Compulsive disorder.   She also returned to Altapointe [sic] Mental Health for treatment, where it was noted she suffered Obsessive Compulsive Disorder, Alcohol Abuse in Remission, Drug Dependence in Remission, and Borderline Personality Disorder.   This evidence was created after the state agency examiners created their opinions[, and, according to Hollis,] casts doubt as to the limitations opined by Dr. Davis and Dr. Duke.

(*Id.* at 4, 6 (record citations omitted).)   Hollis also asserts that her counsel "requested a post-hearing psychological-consultative examination due to the fact that the state agency examination and review was performed before additional evidence that indicated a much more severe impairment was available[,]" (*id.* at 4 (citing R. 72 (Counsel: "I would request that the Court consider and take under advisement whether to send Ms. Hollis out for further psychiatric evaluations. Note that Dr. Davis saw her back in July of '09.   She's been in a treatment program since then. . . . I think a more accurate assessment of her mental residual functional capacity may provide a better understanding of the problems that she's having and whether or not she's disabled.")).

### C.   Analysis.

"In determining whether remand is appropriate in cases such as this one, the

Court must balance an ALJ's duty to develop a full and fair record against a claimant's responsibility to prove disability[,]" keeping in mind "the nonadversarial nature of Social Security administrative proceedings[.]"   *Jenkins v. Colvin*, No. CA 2:12–00465–N, 2013 WL 3465190, at \*6 (S.D. Ala. July 10, 2013); *accord Rivers v. Astrue*, 901 F. Supp. 2d 1317, 1327 (S.D. Ala. 2012) ("[A] claimant bears the burden of proving disability and for producing evidence in support of his claim while the ALJ has 'a basic duty to develop a full and fair record.'" (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam))).[4]

An ALJ's affirmative duty to develop a full and fair record, **in certain cases**, "extends to obtaining a consultative examination when the same would be of benefit in the administrative process."   *Waits v. Astrue*, No. CV 12–J–2371–NE, 2013 WL 625311, at \*4 (N.D. Ala. Feb. 20, 2013) (citing 20 C.F.R. §§ 404.1517; 416.917);

---

[4] Clearly, "the burden is on [Holllis] to prove [s]he is disabled[,]" *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002) (citing 20 C.F.R. § 404.1512(s) ("In general, you have to prove to us that you are blind or disabled.  Therefore, you must bring to our attention everything that shows that you are blind or disabled.  This means you must furnish medical and other evidence that we can use to reach conclusions about your impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.")).   But there also is no doubt that "[a]n administrative law judge has a duty to develop a full and fair record."   *Sims v. Astrue*, Civil Action No. 3:09cv366–CSC, 2010 WL 2952686, at \*2 (M.D. Ala. July 26, 2010) (citing *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985)); *accord Salazar v. Commissioner of Soc. Sec.*, 372 Fed. App'x 64, 67 (11th Cir. Apr. 6, 2010) (per curiam) (citing *Ellison*, 355 F.3d at 1276); *Waits v. Astrue*, No. CV 12–J–2371–NE, 2013 WL 625311, at \*4 (N.D. Ala. Feb. 20, 2013) ("The ALJ always has an affirmative duty to develop a fair, full record." (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997))); *cf. Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial.   It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000) (The SSA "has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad.").

*accord Cox v. Astrue*, No. 5:11–CV–02319–LSC, 2012 WL 4008953, at *5 (N.D. Ala. Sept. 12, 2012) ("The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision." (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984), which in turn cited *Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. Unit B 1981))).

> In fulfilling the duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such is necessary to enable the ALJ to render a decision.  *See Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.").

> It is only where a consultative examination is necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency in the medical evidence that the regulations require an ALJ to order a consultative examination.  *See* 20 C.F.R. § 404.1519a(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."), 20 C.F.R. § 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."); *see also Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) ("The Secretary has broad latitude in ordering consultative examinations.").

*Rivers*, 901 F. Supp. 2d at 1327-28 (initial citation modified).

"The failure of an ALJ to order a consultative examination, when such an evaluation is necessary to make an informed decision, constitutes justifiable cause for a remand to the Commissioner."  *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006) (citing *Reeves*; *Ford*; *Turner v. Califano*, 563 F.2d 669 (5th Cir.

1977)).   "In determining whether it is necessary to remand a case for development of the record, [a court should] consider[] 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'"   *Salazar*, 372 Fed. App'x at 67 (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam)); *see also Cox*, 2012 WL 4008953, at *5 ("Plaintiff must show that the lack of records created an evidentiary gap, resulting in unfairness or clear prejudice." (citing *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991))).

The evidence Hollis cites to establish that the ALJ was required to order the requested second consultative examination appears in the record as Exhibits 11F (R. 256-261); 12F (R. 262-270); and 13F (R. 271) and a portion of Exhibit 14F (R. 272-281).   (*See* Doc. 13 at 4 (citing R. 262-270, 256-261, and 263-273).)   The ALJ's decision specifically cites to and discusses Exhibit 12F (*see* R. 36, 39), and Exhibits 13F and 14F were presented to and considered by the Appeals Council (*see* R. 5).

• Exhibit 11F, records from the Mobile County Health Department dated from May 17, 2010 to June 15, 2010, indicate that Hollis appeared on May 17, complaining that a "[k]not on her back [was] shooting" (R. 258), and again on June 15 for medication refills (*see* R. 256).   Those records further note/assess/diagnose Hollis with "Bipolar disorder, manic, with psychotic features" (R. 257) and indicate that Hollis's "Diagnosis History" includes "Bipolar disorder NOS" and "Obsessive compulsive disorder" (R. 258).   Importantly for purposes of this appeal, as the ALJ's decision explicitly states, Dr. Hakima had already "diagnosed [Hollis] with a Bipolar Disorder," in March 2009, before she was examined by Dr. Davis.   (R. 38 (citing R.

253).)[5]   Thus, the Court cannot say that the Mobile County Health Department records present information that is either ambiguous or conflicts with information available to Dr. Davis, when he examined Hollis in July 2009, or Dr. Duke, when she reviewed Hollis's records the same month, such that this information casts doubt as to the limitations they imposed on Hollis and required the ALJ to order a consultative examination.

•    The substantive portions of Hollis's records from the Lovelady Center (Exhibit 12F (R. 262-270)) include an assessment of Hollis completed on November 9, 2009 (*see* R. 264-268, 270), which reflects that she reported last seeing a doctor in October 2009 and had been previously diagnosed with obsessive compulsive disorder, borderline personality disorder, and Bipolar disorder (*see* R. 270). Similarly, this evidence also does not present information that is in conflict with

_____

[5]    It should also be noted that LaTanja Batain, CRNP, examined Hollis at the Mobile County Health Department in May and June 2010 and is the only signatory on the corresponding records (*see* R. 256, 257, 258, 260, 261).    The Court takes notice that "CRNP" is the recognized acronym for Certified Registered Nurse Practitioner.    "[A] nurse practitioner's opinion is considered 'other source' evidence, and is not given the same controlling weight as a 'treating source.'"    *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *3-5 (E.D. Tenn. Dec. 17, 2010) (quoting § 404.1527(d)).    While such an opinion "is only entitled to fair consideration[,]" *Wilver v. Astrue*, No. 8:07-CV-488-T-EAJ, 2008 WL 2824815, at *3 (M.D. Fla. July 21, 2008) (citation omitted)), the Social Security Administration has "acknowledge[d] that medical sources who do not qualify as 'acceptable medical sources' under the regulations are still considered valuable sources of information." *Sommer*, 2010 WL 5883653, at *3.    ***However***, a nurse practitioner-"other source" may not present evidence to "establish the existence of an impairment."    *Madise v. Astrue*, Civil Action No. 08-00376-B, 2009 WL 3078294, at *11 (S.D. Ala. Sep. 23, 2009) ("'[O]ther' medical sources [ ] may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work, ***but [such evidence] cannot establish the existence of an impairment***." (citing § 404.1513(d)(1) (emphasis added))).    Thus, any diagnosis by Nurse Practitioner Batain expressed in these records cannot be used to establish that Hollis has Bipolar Disorder.

information available to Drs. Davis and Duke in July 2009, such that this information casts doubt as to the limitations they imposed on Hollis and required the ALJ to order a consultative examination.

• As to the exhibits (13F and 14F) not before the ALJ, but first presented to, and considered by, the Appeals Council, it should be noted that the Appeals Council, declined to review the ALJ's decision. (*See* R. 1.) Thus, the Court is not dealing with a case in which it is alleged the ALJ failed to follow the Appeals Council's instruction to further develop the record on remand. *Contra, e.g., Pettaway v. Astrue*, No. CA 08-0171-C, 2008 WL 5111175 (S.D. Ala. Dec. 3, 2008); *Jowers v. Astrue*, Civil Action No. SA–10–CV–0944 NN, 2012 WL 641973, at *1 (W.D. Tex. Feb. 27, 2012) ("The Appeals Council's decision included detailed instructions directing the ALJ to: develop the record fully as it related to Plaintiff's psychiatric impairments (including the instruction to obtain additional testimony from a medical expert with psychological or psychiatric expertise and/or order a consultative examination, if necessary) . . . ."). And if the Court were to assume that the ALJ had the benefit of reviewing Exhibits 13F and 14F, those exhibits also do not present information that is in conflict with information available to Drs. Davis and Duke in July 2009, such that they casts doubt as to the limitations imposed on Hollis in July 2009 and would have required the ALJ to order a consultative examination. Moreover, Exhibits 13F and 14F—like all other evidence Hollis points to on appeal—do not show that the ALJ's decision is not based on substantial evidence.

## IV.    <u>Conclusion</u>

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Hollis benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the 9th day of October, 2013.

 */s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**
